**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

THOMAS MRAVINTZ,                          )
                                          )
                    Plaintiff,            )        Civil Action No. 08-1619
                                          )
          v.                              )
                                          )        Magistrate Judge Lenihan
MICHAEL J. ASTRUE,                        )
Commissioner of Social Security,          )
                                          )        Re: Doc. Nos. 8 &10
                    Defendant.            )

**MEMORANDUM OPINION**

LENIHAN, Magistrate Judge

          Acting pursuant to 42 U.S.C. § 405(g), Thomas Mravintz ("Mravintz" or "Plaintiff")

appeals from a January 5, 2007 decision of the Commissioner denying his application for

disability insurance ("DIB") and supplemental security income ("SSI").  Cross Motions for

Summary Judgment are presently before the Court.  The Motion filed by Plaintiff at Doc. No. 8

will be denied, and the Motion filed by the Commissioner at Doc. No. 10 will be granted.

          <u>Procedural Background</u>

          On March 16, 2005, the Plaintiff filed his application for DIB and SSI, alleging that he

has been disabled since November 10, 2004.  (Tr. 50, 373)  He described the conditions

precluding his ability to engage in substantial gainful activity as carpal tunnel, pain in the arms

and legs, sleep apnea, nightmares, pressure around the chest, blurry eyes, dizziness, light

headedness, four hernia operations, and his eyes shut involuntarily.  He also indicated he has a

hard time concentrating, disorientation, anxiety, depression, stress, and pressure around the head.

(Tr. 96, 100)  Following an initial denial of benefits on April 22, 2005 (Tr. 35, 377), Plaintiff

requested a hearing.  (Tr. 39)

The hearing on Plaintiff's application took place on November 8, 2006, before administrative law judge ("ALJ") James J. Pileggi, in Pittsburgh, Pennsylvania.  (Tr. 398-426) Plaintiff, who was represented by counsel, testified, along with an impartial vocational expert.

Plaintiff testified that he has various pains in the left side of his chest and up the left and right legs, including his calf muscles and through his hip area.  He also indicated he has pain from carpal tunnel syndrome in his left wrist periodically.  (Tr. 406)  He can walk about 400 feet without resting, and stand for about 45 minutes at a time.  (Tr. 407) He also indicated that he can sit for around 15 minutes at a time and lift no more than 5 pounds at a time. .  (Tr. 408-09) He sees a psychiatrist once every two months and attends no other mental health therapy.  (Tr. 410) His vision is blurry which makes it difficult to read.  (Tr. 414) He is able to care for his own personal needs including bathing and dressing.  (Tr. 415) He also cooks for himself, does the laundry and other household chores.  (Tr. 415) He testified he has no outside interests or hobbies and does not socialize with friends.  (Tr. 415-16)

Standard of Review

The standard of judicial review is whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401; Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552 (1988)); Smith, 637 F.2d at 970; Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979).  "Substantial evidence" is more than a "scintilla."  Jesurum v. Secretary

of United States Dep't of Health and Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Stunkard v.

Secretary of Health and Human Servs., 841 F.2d 57, 59 (3d Cir. 1988); Smith, 637 F.2d at 970.

If supported by substantial evidence, the Commissioner's decision must be affirmed.

      The Supreme Court has described a five-part test established by the Commissioner to

determine whether a person is disabled:  The first two steps involve threshold determinations that

the claimant is not presently working and has an impairment which is of the required duration

and which significantly limits his ability to work.  See 20 C.F.R. §§ 416.920(a) through (c).  In

the third step, the medical evidence of the claimant's impairment is compared to a list of

impairments presumed severe enough to preclude any gainful work.  See 20 C.F.R. pt. 404,

subpt. P, App. 1 (pt. A).  If the claimant's impairment matches or is "equal" to one of the listed

impairments, he qualifies for benefits without further inquiry.  § 416.920(d).  If the claimant

cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps.  At these

steps, the inquiry is whether the claimant can do his own past work or any other work that exists

in the national economy, in view of his age, education, and work experience.  If the claimant

cannot do his past work or other work, he qualifies for benefits.  §§ 416.920(e) and (f).  Sullivan

v. Zebley, 493 U.S. 521, 525-26 (1990).  Accord Barnhart v. Thomas, 124 S. Ct. 376, 379-80

(2003).  The initial burden rests with Plaintiff to demonstrate that he is unable to engage in his

past work.  Stunkard, 841 F.2d at 59; Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981);

Dobrowolsky, 606 F.2d at 406; Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979).  The burden

then shifts to the Commissioner to show that other work exists in the national economy that he

could perform.  Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984).    The fifth step is

divided into two parts:

> First, the [Commissioner] must assess each claimant's present job
> qualifications.  The regulations direct the [Commissioner] to
> consider the factors Congress has identified as relevant:  physical
> ability, age, education, and work experience.  See 42 U.S.C.
> § 423(d)(2)(A); 20 C.F.R. § 404.1520(f) (1982).  Second, [he]
> must consider whether jobs exist in the national economy that a
> person having the claimant's qualifications could perform.  20
> C.F.R. §§ 404.1520(f), 404.1566-404.1569 (1982).

Heckler v. Campbell, 461 U.S. 458, 460-61 (1983) (footnotes omitted).


The ALJ's Decision

The ALJ found that Plaintiff has the severe impairments of depression and anxiety.  (Tr. 22) He also found that Plaintiff's gastroesophageal reflux disease is nonsevere, as well as his other physical impairments, singularly or in combination.  (Tr. 23) Next, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments at 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 23) Thereafter, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work, including simple repetitive work, with routine work pressures.  The ALJ noted, however, that Plaintiff must not be exposed to high stress, and cannot perform high quota or close attention to quality production standards, with no more than incidental interactions with the public.  (Tr. 24) The ALJ also found that the Plaintiff is capable of performing his past relevant work as a light exertional security guard, as the above restrictions do not conflict with the demands of this past work.  (Tr. 26)

Having carefully reviewed the entire record, the undersigned concludes that the ALJ's decision was neither erroneous nor unsupported by substantial evidence.  Accordingly, the Court will limit its discussion to the points of error alleged by Plaintiff.

4

Plaintiff raises two contentions of error.  First, Plaintiff argues that "[t]he ALJ erred in rejecting the entirety of Dr. Auhua's[sic] opinion of [Plaintiff's] disability and by disregarding Dr. Chengappa's conclusion, based upon years of examinations, that [Plaintiff] was permanently disabled."  (Doc. No. 9 at 4-6) Second, Plaintiff argues that "[i]t was error for the ALJ to find [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of his impairment-related symptoms not entirely credible."  (Doc. No. 9 at 7-9)

Analysis

1.          The ALJ Properly Evaluated the Treating Physician Evidence of Record

          A.          Dr. Ahuja

Plaintiff argues that an ALJ must accord treating physician reports great weight and that he failed to do so in evaluating the reports of Dr. Ahuja, a psychiatrist at the VA hospital who has been treating Plaintiff since November 2000.  (Doc. No. 9 at 4) Specifically, Plaintiff claims that Dr. Ahuja's reports reflect that Plaintiff has been suffering from major depression with Obsessive Compulsive Disorder traits and that by June 2005, Plaintiff's GAF score had gone from a high of 70, to a low of 55.  (Doc. No. 9 at 5) Plaintiff contends that the ALJ's final decision misrepresents Dr. Ahuja's conclusions in noting that the majority of Plaintiff's sessions indicated at most moderate mental limitations, and that the prescribed medications were helping Plaintiff.  In addition, Plaintiff contends that the ALJ incorrectly assumed that simply because Plaintiff's GAF scores had improved by May of 2006, "that the improvement was not only permanent, but continuing."  (Doc. No. 9 at 5) Finally, Plaintiff claims that it was error for the ALJ to rely "on the findings of record reviewers and not on the credible findings of the

[Plaintiff's] own treating physicians . . . ."  (Doc. No. 9 at 6)

The United States Court of Appeals for the Third Circuit has described the treating

physician doctrine as follows:

> A cardinal principal guiding disability eligibility determinations is that the ALJ
> accord treating physicians' reports great weight, especially "when their opinions
> reflect expert judgment based on a continuing observation of the patient's
> condition over a prolonged period of time."  Where . . . the opinion of a treating
> physician conflicts with that of a non-treating, non-examining physician, the ALJ
> may choose whom to credit but "cannot reject evidence for no reason or for the
> wrong reason."  The ALJ must consider the medical findings that support a
> treating physician's assessment, an ALJ may not make "speculative inferences
> from medical reports" and may reject "a treating physician's opinion outright
> only on the basis of contradictory medical evidence" and not due to his or her
> own credibility judgments, speculation or lay opinion.

Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d

422, 429 (3d Cir. 1999)) (additional internal citations omitted).  See also Fargnoli v. Massanari,

247 F.3d 34, 43 (3d Cir. 2001) ("Under applicable regulations and the law of this Court, opinions

of a claimant's treating physician are entitled to substantial and at times even controlling

weight."); SSR 96-2p ("Giving controlling weight to treating source medical opinions.").  "The

ALJ must review all the medical findings and other evidence presented in support of the

attending physician's opinion of total disability."  Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir.

1994) (citing Wright v. Sullivan, 900 F.2d 675, 683 (3d Cir. 1990)).

A careful review of the medical evidence of record reveals that the ALJ's decision is

supported by substantial evidence.  The ALJ did not reject the findings of Dr. Ahuja, but

considered them in their entirety; in fact, the medical records generated by Dr. Ahuja do not

conflict with the ALJ's analysis.  Instead, Dr. Ahuja's records in no way reflect that Plaintiff's

anxiety and depression resulted in specific functional limitations.  See Tr. 312-313, 345-46, 349,

6

353-54, 364.  Further, these treating records are in accord with the findings of Dr. Heil, the state

agency psychiatrist, that Plaintiff experienced no more than moderate symptoms.  Consequently,

both Dr. Ahuja's treatment notes and Dr. Heil's opinion provide substantial evidence to support

the ALJ's final decision.  Likewise, it was appropriate for the ALJ to rely on the findings of Dr.

Heil in conjunction with the treatment records of Dr. Ahuja.  See SSR 96-6p ("Consideration of

administrative findings of fact by state agency medical and psychological consultants . . . .").

In addition, the ALJ properly considered Plaintiff's GAF scores[1] as reflected in Dr.

Ahuja's treatment notes.  "Neither Social Security regulations nor case law requires an ALJ to

determine a claimant's disability based solely on his GAF scores."  Power v. Astrue, Civil

Action No. 08-147, 2009 WL 578478 at * 8 (W.D. Pa. March 5, 2009) (citing Ramos v.

Barnhart, 513 F. Supp. 2d 249, 261 (E.D. Pa. 2007)).  Instead, the ALJ's decision reflects that

Plaintiff's GAF scores were properly considered in conjunction with other record evidence in

assessing Plaintiff's limitations.

> B.      Dr. Chengappa

Plaintiff further contends that the ALJ erred in finding that the Pennsylvania Department

of Public Welfare Employability Assessment Form ("EAF") completed by Dr. Chengappa and

the conclusions therein were not binding.  (Doc. No. 9 at 6-7) Specifically, Dr. Chengappa

indicated that Plaintiff was permanently disabled due to major depression, sleep apnea, and

---

[1]A Global Assessment of Functioning (GAF) score is used to report an individual's
overall level of functioning with respect only to psychological, social, and occupational
functioning.  A "GAF rating is within a particular decile if **either** the symptom severity **or** the
level of functioning falls within the range."
Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") p.32 (American Psychiatric
Association, Task Force on DSM-IV (4th ed. (Text Revised) 2000) (emphasis in original).

gastroesophagal reflux disease.  (Tr. 371-72) The ALJ, citing 20 C.F.R. 404.1504 and 416.904 noted that "any determination of disability by a governmental or nongovernmental agency is not binding upon the Social Security Administration because it is not based upon the rules and regulations of Social Security."  (Tr. 25) Further, the ALJ noted that he did consider this opinion of Plaintiff's treating physician, that treating physicians are required to complete these forms by the Commonwealth, and that they are completed for reimbursement purposes, rather than for diagnosis and treatment; the ALJ further noted that "there is no function by function analysis given of the claimant's limitations."  (Tr. 25)

The United States Court of Appeals for the Third Circuit has commented upon these form reports as follows:

> Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.  As we pointed out in discussing "residual functional capacity reports," where these so called "reports are unaccompanied by thorough written reports, their reliability is suspect . . . ."

Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (citing Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986)).  Consequently, the ALJ's consideration of Dr. Chengappa's form report was appropriate.

In conclusion, the ALJ's analyses of Plaintiff's treating physician evidence is supported by substantial evidence.

        2.        The ALJ Properly Assessed Plaintiff's Statements concerning the Intensity, Persistence, and Limiting Effects of his Symptoms pursuant to 20 C.F.R. § 404.1529, 416.929, and SSR 96-7p.

Plaintiff further contends that it was error for the ALJ to find that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairment-related symptoms not entirely credible.  Plaintiff argues that the ALJ erred because he speculated that the lack of physical manifestations of his complaints meant that his complaints were untrue, and that the ALJ did not consider that Plaintiff's complaints might have psychological roots consistent with his treating doctor's conclusion that he had major depression.  Plaintiff's final contention is that the ALJ did not consider Plaintiff's tendency to talk excessively about unrelated matters and whether this condition prevented him from engaging in "**any** substantial gainful activity."  (Doc. No. 9 at 7-9) (emphasis in original).

An ALJ is required to make findings on the credibility of a plaintiff's testimony.  Kephart v. Richardson, 505 F.2d 1085, 1089 (3d Cir. 1974).  Ordinarily, his credibility determination is entitled to deference because he "has the opportunity at a hearing to assess a witness's demeanor."  Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003) (citing Atlantic Limo., Inc. v. NLRB, 243 F.3d 711, 718 (3d Cir. 2001)).  The Court of Appeals for the Third Circuit has found an ALJ's credibility determination to be supported by substantial evidence where the ALJ cited specific instances in the record where the plaintiff's complaints of pain or other subjective symptoms were inconsistent with (1) the objective medical evidence of record; (2) other testimony by the plaintiff; and (3) the plaintiff's own description of his daily activities.  Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

Social Security Ruling ("SSR") 96-7p provides a framework for evaluating symptoms in order to assess the credibility of a plaintiff's statements.  First, an ALJ must consider whether there is an underlying medically determinable physical or mental impairment; that is, one that

can be shown by medically acceptable clinical and laboratory diagnostic techniques, that could reasonably be expected to produce the Plaintiff's pain and other symptoms.  Thereafter, the ALJ must evaluate the intensity, persistence, and limiting effects of the Plaintiff's symptoms to determine whether they limit Plaintiff's ability to do basic work activities.  When a plaintiff's statements as to the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by the objective record medical evidence, the ALJ must make a finding on credibility based on the entire case record.  The ALJ must consider the entire case record including medical signs and laboratory findings, Plaintiff's own statements about his symptoms, statements and other information provided by treating or examining physicians, and other persons about Plaintiff's symptoms and how they affect him, and "any other relevant evidence in the case record."  SSR 96-7p.  20 C.F.R. 404.1529(c) and 416.929(c) describe the kinds of evidence that an ALJ must consider in addition to the objective medical evidence when evaluating the credibility of Plaintiff's statements:

1. Plaintiff's daily activities;

2. The location, duration, frequency, and intensity of Plaintiff's pain or other symptoms;

3. Factors that aggravate or precipitate Plaintiff's symptoms;

4. The type, dosage, effectiveness, and side effects of medication Plaintiff takes or has taken for pain or other symptoms;

5. Treatment, other than medication, Plaintiff receives or has received for relief of his symptoms, including pain;

6. Any measures other than treatment the Plaintiff uses or has used to relieve his symptoms, including pain; and

7. Other factors concerning Plaintiff's functional limitations and restrictions due to pain or other symptoms.

Here, the ALJ conducted a proper analysis pursuant to SSR 96-7p and the appropriate regulations.  First the ALJ determined that the Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (Tr. 24) Thereafter, the ALJ conducted an exhaustive analysis of record medical evidence, and properly concluded that this evidence did not support Plaintiff's complaints of debilitating pain and limitations.  The ALJ also considered Plaintiff's daily activities, which likewise, did not support his complaints.  Further, the substance of Plaintiff's mental health records do not support Plaintiff's contention that his physical symptoms could have "psychological roots."  Finally, as to Plaintiff's argument that the ALJ failed to acknowledge Plaintiff's tendency to engage in "extremely tangential and hyperverbal" conversation, the ALJ did take this limitation into account in assessing Plaintiff's residual functional capacity; that is, Plaintiff's residual functional capacity assessment includes no more than incidental interaction with the public.  (Tr. 24) Therefore, the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairment-related symptoms are not entirely credible is supported by substantial record evidence.


Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment at Doc. No. 8 is denied, and Defendant's Motion for Summary Judgment at Doc. No. 10 is granted.  An

11

appropriate order follows.

_____

Lisa Pupo Lenihan
United States Magistrate Judge


December 2, 2009

cc: All counsel of record
    Via electronic filing